**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**WILLIAM A. GRAY**
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ROBERT O. CARUTHERS, JR.,       ) | |
|         ) | |
| Appellant-Defendant,       ) | |
|         ) | |
| vs.       ) | No. 10A01-1009-CR-514 |
|         ) | |
| STATE OF INDIANA,       ) | |
|         ) | |
| Appellee-Plaintiff.       ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Jerome F. Jacobi, Judge
Cause No. 10D02-0802-FA-48

**February 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Robert Caruthers, Jr., appeals his convictions for Class B felony dealing in cocaine, Class A felony dealing in cocaine, two counts of Class D felony possession of a controlled substance, and Class C felony maintaining a common nuisance. We affirm.

**Issues**

Caruthers raises four issues, which we restate as:

    I.   whether the trial court properly admitted evidence found pursuant to a search warrant;

    II.  whether the trial court properly admitted a handgun found at the searched residence;

    III. whether the trial court properly denied Caruthers's request for a continuance; and

    IV.  whether the trial court properly limited Caruthers's cross examination of a law enforcement officer.

**Facts**[1]

On February 18, 2008, Detective Robert McGhee and Detective Dan Lawhorn of the Jeffersonville Police Department conducted a controlled drug buy with confidential informant, Robert Vest. Detective McGhee and Detective Lawhorn met with Vest at

---

[1] Indiana Appellate Rule 29(A), which provides that documentary exhibits shall be included in a separately-bound volume. Nondocumentary and oversized exhibits "shall remain in the custody of the trial court" and "[p]hotographs of any exhibit may be included in the volume of documentary exhibits." Ind. Appellate Rule 29(B). Here, State's Exhibits 10, 11, and 12 were photographs that should have been included in the exhibit volume as documentary exhibits. Instead, the exhibit volume contains only a photograph of blank sheets of paper with exhibit stickers marked State's Exhibit 10, 11, and 12. Similarly, State's Exhibits 15 through 30 were pictures that were not included in the exhibit volume. Again, the exhibit volume contains only a photograph of blank sheets of paper with exhibit stickers marked State's Exhibit 15 through 30. Despite this failure to follow the appellate rules, we were able to review Caruthers's arguments on appeal.

Vest's residence, where they thoroughly searched Vest. Vest called Caruthers and arranged to purchase forty dollars worth of cocaine from Caruthers. Caruthers called back and asked Vest to put oil in Caruthers's car when he arrived. Either Detective McGhee or Detective Lawhorn observed Vest from the time he left his house until he returned. Detective McGhee watched from his vehicle on the street, and Detective Lawhorn watched from Vest's residence. Vest rode his bicycle a short distance to 802 Walnut Street, Caruthers's mother's residence. Detective McGhee then saw Vest put oil in Caruthers's car and approach the door to the Walnut Street residence. Caruthers told Vest that he "wasn't ready" yet and said to put more oil in the car. Tr. p. 609. Vest rechecked the oil in Caruthers's car and then returned to the residence. Caruthers then gave Vest cocaine in exchange for the forty dollars. Detective McGhee saw Caruthers standing in the threshold and saw Vest and Caruthers exchange something. Vest then left, closed the hood on Caruthers's car, and rode his bicycle back to his house. Detective Lawhorn searched Vest again, and Vest gave the cocaine to Detective Lawhorn. Later testing revealed that Vest had purchased 0.27 gram of cocaine.

That evening Detective McGhee sought a search warrant for the Walnut Street residence. He faxed a search warrant affidavit to Judge Cecile Blau shortly after midnight on February 19, 2008, and the judge signed the search warrant at 12:20 a.m. The judge faxed a signed copy of the search warrant back to Detective McGhee. During a search of the residence later that day, the officers found a large amount of crack cocaine, baggies, mail addressed to Caruthers, counterfeit currency, a digital scale, a nine millimeter semi-automatic handgun, ammunition, controlled substances, and almost

3

$76,000 in cash. Caruthers acknowledged to Detective McGhee that the digital scale belonged to him and, after the officers found a large amount of cocaine, he said, "you found what you're looking for just take me to jail." Id. at 654. In Caruthers's pocket, Detective McGhee discovered the forty dollars used by Vest to purchase cocaine. Caruthers's driver's license identified his address as 802 Walnut Street.

The State charged Caruthers with Class A felony dealing in cocaine, Class C felony possession of cocaine, two counts of Class D felony possession of a controlled substance, and Class C felony maintaining a common nuisance. The State later added a charge of Class B felony dealing in cocaine. Caruthers filed a motion to suppress evidence, alleging defects in the search warrant process, but the trial court denied the motion. During the jury trial, Caruthers objected to the admission of evidence found as a result of the search warrant, which the trial court overruled. Caruthers also objected to the admission of the handgun, which the trial court overruled, requested a continuance to investigate a newly discovered document, which the trial court denied, and sought unsuccessfully to question Detective Lawhorn regarding his actions in an unrelated drug case. A jury found Caruthers guilty as charged. Due to double jeopardy concerns, the trial court only sentenced Caruthers for his convictions of Class B felony dealing in cocaine, Class A felony dealing in cocaine, two counts of Class D felony possession of a controlled substance, and Class C felony maintaining a common nuisance. Caruthers was sentenced to fifty years in the Department of Correction with ten years suspended to probation. He now appeals.

4

## Analysis

### *I. Search Warrant*

Caruthers argues that the trial court abused its discretion by admitting the evidence found as a result of the search warrant. A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its rulings only where it is shown that the court abused that discretion. Turner v. State, 953 N.E.2d 1039, 1045 (Ind. 2011). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id.

According to Caruthers, the search warrant was defective because it was based on uncorroborated hearsay from a source with unknown credibility, i.e., Vest. "In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." State v. Foy, 862 N.E.2d 1219, 1224 (Ind. Ct. App. 2007) (citing State v. Spillers, 847 N.E.2d 949, 952-53 (Ind. 2006)), trans. denied. "The reviewing court's duty is to determine whether the issuing magistrate had a 'substantial basis' for concluding that probable cause existed." Id. (quoting Spillers, 847 N.E.2d at 953). A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause. Id. (citing Spillers, 847 N.E.2d at 953).

The Fourth Amendment to the U.S. Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

5

searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 1, Section 11 of the Indiana Constitution contains nearly identical language. Jackson v. State, 908 N.E.2d 1140, 1143 (Ind. 2009). These constitutional principles are codified in Indiana Code Section 35-33-5-2, which details the information to be contained in an affidavit for a search warrant. Id. Where a warrant is sought based upon hearsay information, the affidavit must either: "(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay." I.C. § 35-33-5-2(b). "[U]ncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." Foy, 862 N.E.2d at 1225 (quoting Jaggers v. State, 687 N.E.2d 180, 182 (Ind. 1997)).

In the affidavit for the search warrant, Detective McGhee described the controlled drug buy between confidential informant Vest and Caruthers. Detective McGhee described the search of Vest, the constant surveillance of Vest, observing the exchange between Vest and Caruthers, and the field test of Vest's purchase from Caruthers. The affidavit simply was not based on uncorroborated hearsay from Vest. Detective McGhee's personal observation of the controlled buy was sufficient to establish grounds for probable cause. The trial court did not abuse its discretion by admitting the evidence on this basis. See, e.g., Mills v. State, 177 Ind. App. 432, 435, 379 N.E.2d 1023, 1026

6

(1978) (holding that an officer's personal observation of a controlled drug buy sufficed as grounds for a finding of probable cause to issue a search warrant).

Next, Caruthers argues that the search warrant affidavit was defective because it failed to comply with several statutory requirements. He argues that Detective McGhee failed to make a return on the warrant as required by Indiana Code Section 35-33-5-4(1), which provides: "The officer who executed the warrant shall make a return on it directed to the court or judge, who issued the warrant, and this return must indicate the date and time served and list the items seized." However, the State points out that the search warrant affidavit, the search warrant, and the return are all included in the record on appeal. See App. pp. 247-50. Even if Detective McGhee failed to follow the statutory requirement of making a return on the warrant, our supreme court held in Owens v. State, 659 N.E.2d 466, 478 (Ind. 1995), that the failure to file a return did not warrant the suppression of evidence otherwise properly seized without a demonstration of prejudice. Caruthers has not demonstrated that he was prejudiced by the alleged failure to file a return.

Caruthers also argues that the requirements of Indiana Code Section 35-33-5-8 for obtaining a search warrant by facsimile were not met. Indiana Code Section 35-33-5-8 provides, in relevant part:

> (a)  A judge may issue a search or arrest warrant without the affidavit required under section 2 of this chapter, if the judge receives sworn testimony of the same facts required for an affidavit:
> (1)  in a nonadversarial, recorded hearing before the judge;
> (2)  orally by telephone or radio; or

7

> (3)    in writing by facsimile transmission (FAX).

> * * * * *

> (c)    After transmitting an affidavit, an applicant for a warrant under subsection (a)(3) shall transmit to the judge a copy of a warrant form completed by the applicant. The judge may modify the transmitted warrant. If the judge agrees to issue the warrant, the judge shall transmit to the applicant a duplicate of the warrant. The judge shall then sign the warrant retained by the judge, adding the time of the issuance of the warrant.

> * * * * *

> (e)    If a warrant is issued under subsection (a)(3), the judge shall order the court reporter to the [sic] retype or copy the facsimile transmission for entry in the record. The judge shall certify the transcription or copy and warrant retained by the judge for entry in the record.

> (f)    The court reporter shall notify the applicant who received a warrant under subsection (a)(2) or (a)(3) when the transcription or copy required under this section is entered in the record. The applicant shall sign the typed, transcribed, or copied entry upon receiving notice from the court reporter.

I.C. § 35-33-5-8.

According to Caruthers, the requirements of subsections (e) and (f) were not met because there is no evidence that the judge ordered the court reporter to retype or copy the facsimile transmission for entry in the record, that the judge certified the transcription or the copy, that the court reporter notified Detective McGhee when the transcription or copy was entered in the record, or that Detective McGhee signed the typed, transcribed, or copied entry. The State responds that "[t]here was nothing more the law enforcement

8

officers could have done when seeking to comply with the law" and that "suppressing the evidence based on record-keeping technicalities required of the court would do nothing to deter police misconduct." Appellee's Br. p. 14.

The Supreme Court of the United States held in United States v. Leon, 468 U.S. 897, 920, 104 S. Ct. 3405, 3419 (1984), that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. "In most such cases, there is no police illegality and thus nothing to deter." Leon, 468 U.S. at 920-21, 104 S. Ct. at 3419. Leon cautioned however that the good faith exception is not available in some situations, including where (1) the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or (2) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923, 104 S. Ct. at 3421 (citation omitted). The good faith exception to the warrant requirement has been codified by Indiana Code Section 35-37-4-5. Spillers, 847 N.E.2d at 957.

The alleged failure of the trial court and court reporter to complete the record-keeping statutory requirements does not involve police illegality, misleading the magistrate, or a lack of probable cause. Even if the trial court and court reporter failed to comply with the record-keeping requirements of Indiana Code Section 35-37-4-5, we

9

conclude that the officers relied on the search warrant in objective good faith. The trial court properly admitted the evidence found pursuant to the search warrant.[2]

## II. *Admission of Handgun*

Caruthers argues that the trial court abused its discretion by admitting the handgun found during the search. A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its rulings only where it is shown that the court abused that discretion. Turner, 953 N.E.2d at 1045. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id.

According to Caruthers, the trial court abused its discretion by admitting a handgun found during the search because Caruthers was not charged with any offenses related to the handgun. Relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Hubbell v. State, 754 N.E.2d 884, 889 (Ind. 2001) (citing Ind. Evidence Rule 403). Our supreme court has held that "'the introduction of weapons not used in the commission of the crime and not otherwise relevant to the case may have a prejudicial effect.'" Id. at 890 (quoting Lycan v. State, 671 N.E.2d 447, 454 (Ind. Ct. App. 1996)). In Hubbell, where the defendant challenged his convictions for murder and criminal confinement, the court held that "[t]he highly attenuated relevance of the gun was insufficient to overcome its potential prejudice." Id.

---

[2] Caruthers also argues that, under the totality of the circumstances, the search warrant was defective under Article 1, Section 11 of the Indiana Constitution based on the lack of compliance with the statutory requirements. The good faith exception is applicable under the Indiana Constitution. Wendt v. State, 876 N.E.2d 788, 790-91 (Ind. Ct. App. 2007), trans. denied. Having found that, even if the statutory requirements were not met, the good faith exception applies, we need not address Caruthers's argument further.

However, in <u>Eaton v. State</u>, 889 N.E.2d 297, 302 (Ind. 2008), <u>cert. denied</u>, our supreme court found that evidence seized from the defendant's residence, including handguns, was "directly relevant to the defendant's intent to deliver" cocaine.

Here, the State argues the handgun was admissible because it "was with cocaine and other accoutrements typically used by drug dealers" and it "reasonably supported the inference that he was dealing in cocaine." Appellee's Br. p. 17. We agree with the State. The handgun was found during a search of Caruthers's mother's residence after Caruthers sold cocaine to a confidential informant there. Officers found numerous items of evidence associated with drug dealing, including a large amount of crack cocaine, baggies, mail addressed to Caruthers, counterfeit currency, a digital scale, a nine millimeter semi-automatic handgun, ammunition, controlled substances, and almost $76,000 in cash. The State charged Caruthers with dealing in cocaine, along with other drug related charges. As in <u>Eaton</u>, we conclude that the evidence, including the handgun, was directly relevant to Caruthers's intent to deliver the cocaine. The trial court did not abuse its discretion by admitting the handgun.

### III. Request for a Continuance

Caruthers argues that the trial court abused its discretion by failing to grant a continuance. This argument concerns a document that Caruthers first learned of during the trial. Detective McGhee mentioned during his direct testimony that an FBI firearms trace summary had been performed on the handgun discovered in the search of the Walnut Street residence. Caruthers argued that he had not been provided with the document during the discovery process and that the document was exculpatory.

11

Caruthers asked for a continuance to look at the report and have the opportunity to offer it as evidence. The trial court allowed Caruthers to question Detective McGhee about the document. Detective McGhee testified that he had discovered the document only a few days before the trial. The document demonstrated that the gun was purchased in 2005 by someone other than Caruthers. The trial court denied Caruthers's request for a continuance, and the document was entered into evidence as Defendant's Exhibit 1. Caruthers discussed the document during his closing argument, and he argued that the document showed the gun did not belong to Caruthers and that Caruthers did not sell cocaine to Vest.

Indiana Code Section 35-36-7-1 provides for a continuance upon a proper showing of an absence of evidence or the illness or absence of the defendant or a witness. Maxey v. State, 730 N.E.2d 158, 160 (Ind. 2000). Rulings on non-statutory motions for continuance, such as Caruthers's motion, lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. Id.

On appeal, Caruthers argues that a continuance would have allowed him to introduce evidence regarding the true owner of the handgun. The State points out that Caruthers was able to examine the document, cross examine Detective McGhee about it, enter the document into evidence, and argue during closing that the gun did not belong to Caruthers. Moreover, even if Caruthers had been able to introduce evidence regarding the gun's record owner, such evidence would not demonstrate that Caruthers did not sell cocaine to Vest or that the significant amounts of cocaine, cash, controlled substances,

12

and other paraphernalia did not belong to Caruthers. Caruthers has failed to demonstrate how he was prejudiced by the trial court's denial of his motion for a continuance.

### IV. *Limitation of Cross Examination*

Caruthers argues that the trial court abused its discretion by limiting his cross examination of Detective Lawhorn regarding his actions in a different criminal case and resulting discipline by his employer. The right to cross examine witnesses is guaranteed by the Sixth Amendment to the United States Constitution and is one of the fundamental rights of our criminal justice system. Washington v. State, 840 N.E.2d 873, 886 (Ind. Ct. App. 2006), trans. denied. However, this right is subject to reasonable limitations imposed at the discretion of the trial court. Id. Trial courts retain wide latitude to impose reasonable limits on the right to cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Id. We will find an abuse of discretion when the trial court controls the scope of cross examination to the extent that a restriction substantially affects the defendant's rights. Id.

Detective Lawhorn testified regarding the controlled buy with Vest and the search of the Walnut Street residence. During cross examination, Caruthers sought to question Detective Lawhorn regarding an unrelated drug case where Detective Lawhorn made an incorrect statement in an affidavit for a search warrant. The incorrect statement was that Detective Lawhorn had completely observed a controlled buy. As a result of the incident, Detective Lawhorn received disciplinary action of five days suspension for conduct unbecoming an officer. Detective Lawhorn was not prosecuted criminally for his actions.

13

The trial court ruled that the evidence was not admissible under Indiana Evidence Rule 404(b).[3]

First, we fail to see how the evidence at issue was relevant. See Ind. Evidence Rule 402. Detective Lawhorn testified that he was stationed in Vest's residence and did not observe the controlled buy, and Detective Lawhorn also did not prepare the search warrant affidavit here. Evidence that Detective Lawhorn incorrectly claimed in a search warrant affidavit to have witnessed a controlled buy in an unrelated drug case is simply not relevant.

On appeal, Caruthers argues that the evidence was admissible under Indiana Evidence Rule 616 because it showed "bias." Appellant's Br. p. 15. Indiana Evidence Rule 616 provides: "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." However, Caruthers has not demonstrated how Detective Lawhorn's actions in an unrelated case show that he was biased against Caruthers. Moreover, Indiana Evidence Rule 608(a) permits the attack of a witness's credibility by evidence in the form of opinion or reputation, but only to the extent that the evidence refers to the witness's

---

[3] Indiana Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Caruthers makes no argument concerning Indiana Evidence Rule 404(b).

truthfulness. The defendant may not inquire into specific instances of conduct, except for evidence that the witness was convicted of a crime provided for in Indiana Evidence Rule 609. Ind. Evid. R. 608(b). Under these rules, Caruthers could not impeach Detective Lawhorn's credibility with evidence specific to an allegation concerning the officer's actions in the other drug case or the resulting disciplinary action against him. That evidence did not constitute opinion of the officer's reputation under Indiana Evidence Rule 608(a), and it is not a conviction of a crime listed in Indiana Evidence Rule 609. See, e.g., Palmer v. State, 654 N.E.2d 844, 848 (Ind. Ct. App. 1995) (holding that an officer's drug use and related suspension were not admissible on cross examination under the rules of evidence). The trial court did not abuse its discretion by limiting Caruthers's cross examination of Detective Lawhorn on this issue.

## Conclusion

The trial court properly admitted evidence found pursuant to the search warrant and properly admitted the handgun found during the search. The trial court did not abuse its discretion by denying Caruthers's motion for a continuance. Further, the trial court did not abuse its discretion by limiting Caruthers's cross examination of Detective Lawhorn. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.

15